UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------X

JOSE VALENTIN PINEDA SUERO,

                        Plaintiff,

            -v-

U.S. DEPARTMENT OF HOMELAND SECURITY;
KEVIN K. McALEENAN,* in his official capacity as
Acting Secretary; U.S. CITIZENSHIP AND
IMMIGRATION SERVICES; L. FRANCIS CISSNA, in
his official capacity as Director; THOMAS CIOPPA, in his
official capacity as Director of the New York District
Office,

                        Defendants.

-----------------------------------------------------------------X

18 Civ. 4992 (PAE)

OPINION & ORDER

PAUL A. ENGELMAYER, District Judge:

Plaintiff Jose Valentin Pineda Suero ("Pineda") brings this action against the U.S. Department of Homeland Security ("DHS"), DHS Acting Secretary Kevin K. McAleenan, U.S. Citizenship and Immigration Services ("USCIS"), and related officials (collectively "defendants") seeking review, under the Administrative Procedures Act ("APA"), 5 U.S.C. § 551, *et seq.*, and the Mandamus Act, 28 U.S.C. § 1361, of defendants' denial of his Form I-485 application to register permanent residence or adjust his status. Pending now is defendants' motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). For the following reasons, the Court grants the motion to dismiss.

---

* Kevin K. McAleenan has been substituted for his predecessor, Kirstjen M. Nielsen, as Acting Secretary of the Department of Homeland Security under Fed. R. Civ. P. 25(d).

## I. Background[1]

### A. Facts

Pineda is a citizen of the Dominican Republic residing in the Bronx, New York. Compl. ¶¶ 5, 11. On September 17, 2000, Pineda was discovered by an immigration inspector on board a cruise ship at the Port of Miami, Florida. *Id.* ¶ 12. At that time, he was deemed a stowaway. *Id.* Pineda was not admitted into the United States. Instead, he was detained and questioned by immigration officers. *Id.* ¶¶ 13–14.

Thereafter, Pineda alleged a fear of being returned to the Dominican Republic. On November 8, 2000, he was again questioned by immigration officers, who determined that Pineda had a credible fear of persecution if returned to the Dominican Republic. *Id.* ¶¶ 15–16. Pineda was then placed into asylum-only proceedings before an immigration court in Miami and was paroled into the United States. *Id.* ¶¶ 16–17. Pineda applied for asylum before an immigration judge but his application was denied. *Id* ¶ 18. After this denial, Pineda remained present in the United States. *Id.* ¶ 19.

On April 27, 2001, Pineda's brother, Alberto Pineda, a United States citizen, filed a "Petition for Alien Relative," Form I-130, on Pineda's behalf. *Id.* ¶¶ 20–21. On November 5, 2009, the petition was approved. *Id.* ¶ 22. On July 22, 2013, Pineda filed an Application to Register Permanent Residence or Adjust Status, Form I-485 (the "Application"), with USCIS.

---

[1] The following account is drawn from the Complaint, Dkt. 3 ("Compl."). The Court accepts as true all factual allegations in the complaint, drawing all reasonable inferences in Pineda's favor. *See Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012). "In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *See DiFolco v. MSNBC Cable LLC*, 622 F.3d 104, 111 (2d Cir. 2010).

2

*Id.* ¶ 23. On November 15, 2013, USCIS denied the Application "due to a finding that [Pineda] was statutorily ineligible for adjustment of status in the United States." *Id.* ¶ 24. USCIS based this determination on Immigration and Nationality Act ("INA") § 212(a)(6)(C)(ii), due to a "false claim of United States Citizenship." *Id.* On December 5, 2013, Pineda filed a motion to reconsider the denial of his Application, Form I-290B. *Id.* ¶ 25. On October 5, 2015, USCIS denied that motion. *Id.*

On February 2, 2017, Pineda filed an action in this District under the APA seeking *de novo* review of USCIS's November 15, 2013 denial of the I-485 Applications and the subsequent motion to reconsider. *Id.* ¶ 26. On March 28, 2017, the parties stipulated to withdraw that action pursuant to an agreement that USCIS would *sua sponte* reopen the I-485 Application and re-adjudicate the application. *Id.* ¶ 27.

Pursuant to that agreement, USCIS reopened the Application. *Id* ¶ 28. However, on April 6, 2017, USCIS again denied the Application. In contrast to its November 15, 2013 denial, USCIS no longer found that Pineda was statutorily ineligible for adjustment of status under INA § 212(a)(6)(C)(ii). *Id.* ¶ 30. Instead, USCIS determined that Pineda is a stowaway, writing:

> [Y]ou were apprehended by the former Immigration and Naturalization Service on board Carnival Cruise Lines M/V Paradise on September 17, 2000, as a stowaway .... On February 2, 2002, you were paroled from custody while your Asylum Only Proceedings were pending .... Despite your parole from custody, you remain a stowaway.

*Id.* ¶ 31. USCIS further concluded that because Pineda is a stowaway, he is inadmissible to the United States, and, therefore, ineligible for adjustment of status under INA § 245. *Id.* ¶¶ 31–32.

**B.   Procedural History**

On June 8, 2019, Pineda filed the Complaint. Dkt. 3. He seeks relief from USCIS's denial of the Application, under the APA and/or the Mandamus Act. In particular, he seeks a

3

declaration that the denial of the Application was unlawful and an order requiring USCIS to reopen and grant the Application. On November 20, 2018, defendants timely moved to dismiss the Complaint and filed a supporting memorandum of law ("Def. Mem.") and declaration. *See* Dkts. 35–37. On December 4, 2018, Pineda filed his memorandum in opposition. Dkt. 38 ("Pineda Mem."). On December 11, 2018, defendants filed their reply. Dkt. 39 ("Def. Reply").

## II. Legal Standards

### A. Rule 12(b)(6)

To survive a motion to dismiss under Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim will only have "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). A complaint is properly dismissed, where, as a matter of law, "the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Twombly*, 550 U.S. at 558. Accordingly, a district court must accept as true all well-pleaded factual allegations in the complaint and draw all inferences in the plaintiff's favor. *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007). However, that tenet "is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. A pleading that offers only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

### B. The Administrative Procedure Act

The APA directs courts to "hold unlawful and set aside" agency actions that are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). An agency action is arbitrary and capricious if "the agency has relied on factors

which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Nat'l Res. Def. Council v. EPA*, 658 F.3d 200, 215 (2d Cir. 2011). This standard is deferential, but a reviewing court's "inquiry must be 'searching and careful.'" *Nat'l Audubon Soc'y v. Hoffman*, 132 F.3d 7, 14 (2d Cir. 1997) (quoting *Marsh v. Or. Nat'l Res. Council*, 490 U.S. 360, 378 (1989)).

### C. The Mandamus Act

"[M]andamus is an extraordinary remedy, intended to aid only those parties to whom an official or agency owes a 'clear nondiscretionary duty.'" *Escaler v. U.S. Citizenship & Immigration Servs.*, 582 F.3d 288, 292 (2d Cir. 2009) (quoting *Heckler v. Ringer*, 466 U.S. 602, 616 (1984)). Mandamus may be awarded "only if the plaintiff proves that (1) there is a clear right to the relief sought; (2) the Government has a plainly defined and peremptory duty to perform the act in question; and (3) there is no other adequate remedy available." *Benzman v. Whitman*, 523 F.3d 119, 132–33 (2d Cir. 2008).

## III. Discussion

Defendants argue that Pineda fails to state a claim on which relief can be granted because USCIS's decision was lawful and committed to the agency's discretion. Specifically, defendants argue that, as a matter of law, because Pineda is a stowaway, he is statutorily ineligible to seek adjustment of status. Thus, they argue, USCIS acted lawfully in denying his Application for adjustment of status and Pineda is not entitled to APA or mandamus relief.

5

## A. Statutory and Regulatory Framework

A brief overview of the statutory and regulatory framework is useful here. Under 8 U.S.C. § 1255(a), the Attorney General may adjust the immigration status of an alien who was "inspected and admitted or paroled into the United States" only if, *inter alia*, "the alien is eligible to receive an immigrant visa and is admissible to the United States for permanent residence" and "an immigrant visa is immediately available to [the alien] at the time his application is filed." 8 U.S.C. § 1255(a)(2)–(3).

As to aliens who are ineligible for adjustment of status under § 1255(a), including aliens who entered the United States without inspection, § 1255(i) provides certain limited avenues for relief. Under § 1255(i), an alien may apply for adjustment of status, notwithstanding the limitations of § 1255(a), if he (1) is a beneficiary of an immigrant visa petition under 8 U.S.C. § 1154 filed on or before April 30, 2011, (2) was physically present in the United States on December 21, 2000, and (3) pays a $1,000 fee. 8 U.S.C. § 1255(i). Upon receipt of an application for adjustment of status and the required fee, the Attorney General may adjust the status of an alien who otherwise satisfies these requirements, but only if the alien "is admissible to the United States for permanent residence," and "an immigrant visa is immediately available to the alien at the time the application is filed." *Id.* § 1255(i)(2)(A)–(B).

Stowaways are not eligible to apply for admission to the United States. *See* 8 U.S.C. § 1225(a)(2) ("An arriving alien who is a stowaway is not eligible to apply for admission or to be admitted."); 8 U.S.C. § 1182(a)(6)(D) ("Any alien who is a stowaway is inadmissible."). Under 8 U.S.C. § 1101(a)(49), a stowaway is an alien who "obtains transportation without the consent of the owner, charterer, master or person in command of any vessel or aircraft through concealment aboard such vessel or aircraft." A stowaway "may apply for asylum only if the

stowaway is found to have a credible fear of persecution," but "[i]n no case may a stowaway be considered an applicant for admission . . . ." *Id.* §§ 1225(a)(2). These prohibitions reflect Congress's judgment that "stowaways are generally viewed as a disfavored category" of alien. *Dia Nav. Co. Ltd. v. Pomeroy*, 34 F.3d 1255, 1259 (3d Cir. 1994); *see also Linea Area Nacional de Chile S.A. v. Sale*, 865 F. Supp. 971, 980 (E.D.N.Y. 1994).

Aliens paroled into the United States, as Pineda was, Compl. ¶¶ 16–17, are deemed arriving aliens. An "arriving alien" is

> an applicant for admission coming or attempting to come into the United States at a port-of-entry, or an alien seeking transit through the United States at a port-of-entry, or an alien interdicted in international or United States waters and brought into the United States by any means, whether or not to a designated port-of-entry, and regardless of the means of transport. An arriving alien remains an arriving alien even if paroled . . . an even after such parole is terminated or revoked.

8 C.F.R. § 1.2.

### B. Discussion

Defendants argue that Pineda is a stowaway and is ineligible for admission. As such, defendants argue, he is statutorily ineligible, under §§ 1255(a) or (i), for the relief he seeks: adjustment of status. Therefore, defendants argue, the USCIS's denial of Pineda's Application was legally proper and Pineda has failed to state a claim for relief from that denial, whether sought under the APA or mandamus.

Defendants are correct. The statutory language is unambiguous. Relevant here, the Attorney General may adjust an alien's immigration status *only* if, *inter alia*, the alien "is admissible to the United States for permanent residence." 8 U.S.C. §1255(a); *id.* § 1255(i)(2)(A). And stowaways categorically are "not eligible to apply for admission or to be admitted." *Id.* § 1225(a)(2). Because stowaways are ineligible for admission, and because the Attorney General may adjust the status of only those aliens eligible for admission, it necessarily

7

follows that stowaways are ineligible for adjustment of status. *See Czarniak v. Nielsen*, No. 18 Civ. 534, 2018 WL 5884517, at *2–3 (N.D. Ill. Nov. 9, 2018) (concluding that alien plaintiff was a stowaway and "stowaways are not eligible for [lawful permanent residence] status"); *Ali v. U.S. Citizenship & Immigration Servs.*, No. 10-80338-CIV, 2010 WL 5252875, at *3–4 (S.D. Fla. Dec. 9, 2010) (same).

Pineda does not contest this point, Pineda Mem. at 5, or, apparently, his stowaway status, Compl. ¶ 12. Instead, he argues that he is nonetheless eligible for adjustment of status because he has been deemed both a stowaway *and* an arriving alien. Pineda Mem. at 5–6. Pineda argues that his "status as an arriving alien trumps [his] status as a stowaway," *id.* at 5, allowing him to seek adjustment of status. But that argument is contradicted by the plain language of 8 U.S.C. § 1225(a)(2). It provides that "[a]n *arriving alien* who is a stowaway is not eligible to apply for admission or to be admitted." (emphasis added). This statutory provision clearly contemplates a class of aliens who are—as Pineda claims to be—deemed both stowaways *and* arriving aliens. And it makes clear that such aliens are inadmissible to the United States. Because the adjustment of status is available only to aliens who are admissible to the United States, *see id.* § 1255(a), § 1255(i)(2)(A), aliens deemed stowaways are ineligible for adjustment of status regardless of whether they are also considered "arriving aliens."

*Yiu Sing Chun v. Sava*, 708 F.2d 869 (2d Cir. 1983), on which Pineda relies, is inapposite. There, the Second Circuit addressed whether stowaways seeking political asylum are entitled to asylum eligibility hearings before an immigration judge after their applications for asylum have been denied by immigration officers. *Id.* at 869. The Circuit considered the Refugee Act of 1980, which provides for asylum hearings regardless of an alien's status, in tandem with 8 U.S.C. § 1323(d), which expressly precludes stowaways from appealing an

8

immigration agency's denial of asylum to an immigration judge. The Circuit noted that "[d]espite the fact that [petitioners] are stowaways, their procedural rights as *asylum applicants* derive from the Refugee Act of 1980." *Id.* at 874. While the provisions of § 1323(d) were in tension with the Refugee Act, the Circuit held, the two provisions could be "reconciled by allowing stowaways a hearing limited to the asylum claim, followed by whatever other procedural rights other asylum applicants are offered." *Id.* at 876.

Pineda casts *Yiu Sing Chun* as establishing that "stowaways are not always stowaways and should be treated as arriving aliens when seeking asylum." Pineda Mem. at 10. But Pineda's argument ignores § 1225(a)(2), which was not at issue in *Yiu Sing Chun*, and significantly overreads *Yiu Sing Chun*'s narrow holding. The Second Circuit there held only that, in light of the Refugee Act's directive that an alien "may apply for asylum" "irrespective of such alien's status," 8 U.S.C. § 1158(a)(1), stowaways, like other classes of aliens, are entitled to a hearing before an immigration judge "limited to the asylum issue."[2] *Id.* at 874. The Circuit emphasized that the hearings to which stowaways are entitled are "limited solely to the issue of asylum eligibility . . . [and] nothing more." *Id.* at 876. That limitation defeats Pineda's sweeping reading of *Yiu Sing Chun*. Notably, following *Yiu Sing Chun*, other courts have held that "despite the availability of an asylum hearing, stowaways remain 'excluded' aliens . . . ." *Argenbright Sec. v. Ceskoslovenske Aeroline*, 849 F. Supp. 276, 281 (S.D.N.Y. 1994); *see also Waldei v. I.N.S.*, 938 F. Supp. 362, 370 (E.D. La. 1996). The fact that Pineda was paroled into the United States also does not alter his legal status as a stowaway. *See Leng May Ma v. Barber*, 357 U.S. 185, 190 (1958) ("The parole of aliens seeking admission is simply a device through

---

[2] Pineda acknowledges that he has already received the asylum hearing to which he is entitled. Compl. ¶ 18 ("Plaintiff applied for asylum but that application for asylum was denied by an Immigration Judge.").

9

which needless confinement is avoided while administrative proceedings are conducted. It was never intended to affect an alien's status . . . .").

In sum, because Pineda was deemed a stowaway—a classification he does not contest—he is ineligible to seek adjustment of status. It follows that Pineda's complaint challenging the denial of his Application to adjust his status fails to state a claim under the APA because Pineda has not alleged circumstances making the denial of his Application unlawful. Likewise, Pineda fails to allege entitlement to mandamus relief because he has not alleged facts on which he has "a clear right to the relief sought." *Benzman*, 523 F.3d at 133. Accordingly, defendants' motion to dismiss is granted.

## CONCLUSION

For the foregoing reasons, the Government's motion to dismiss is granted. The Clerk of Court is respectfully directed to terminate the motion pending at Dkt. 35 and to close this case.

SO ORDERED.

    *Paul A. Engelmayer*
Paul A. Engelmayer
United States District Judge

Dated: April 10, 2019
      New York, New York